May it please the Court, my name is Stacey Tolchin. I'm here with Mark Vanderhout representing Petitioner Hrusyev and Hrusyeva who are both present in the courtroom today. There are two petitions for review pending before the Court. One involves a motion to reopen that was denied by the Board of Immigration Appeals, and one involves a direct appeal of a denial of asylum, withholding, and protection under the Torture Convention. I'd first like to address the motion to reopen. Now, petitioners allege that their prior counsel, Christopher Karofsky, committed ineffective assistance of counsel. In order to prevail in such a case, petitioners must show that prior, that competent counsel would have acted otherwise, and that the outcome of the proceedings may have been different. So I'd like to focus on three points in which I believe Karofsky erred. The first Was the basis for the motion to reopen ineffective assistance of counsel? It was twofold, Your Honor. The first was ineffective assistance, and the second was then a change in country conditions if the Board found that there was no ineffective assistance of counsel. Okay. And the first error that Karofsky committed was failing to properly document the persecution of Russians in the Ukraine. The second was in failing to advise Mrs. Husieva to file a separate application for withholding of removal. And the third was failing to corroborate that Petitioner Husieva had made 10 to 15 political speeches in the Ukraine. I think the rule is, isn't it, that if you have an asylum claim, you automatically have a withholding claim? Not if you're a derivative applicant. So the way it worked here is Petitioner Husieva filed the application, and Mrs. Husieva was a derivative. Once it became clear, which it was at the beginning, that there was an issue regarding the one-year filing deadline, then the application would only be treated as a withholding application if it was determined that Petitioner Husieva did not file the application in time. If that's true, it would have been required for Petitioner Husieva, Mrs. Husieva, to have a separate application for withholding, because otherwise there was no application on file for her. There would have had to be a separate application, therefore withholding of removal. And, of course, she had an independent claim. She herself had been assaulted on two different occasions based on her national origin. In addition, her daughter had been sexually assaulted and physically assaulted based on her national origin. And, of course, her husband, Mr. Husieva, had been assaulted. She, Mrs. Husieva, also was subject to discrimination at her job and lost her job as a result of her national origin. However, none of that was submitted because, and her claim was never heard. And, in fact, Karofsky, in his response to the allegations against him, does not even address that issue at all. He never addresses his failure to submit it. Didn't he say something about she didn't want to testify separately or something? Correct, Your Honor. He states that she didn't want to testify, and there is a factual dispute in the record on that issue. But as far as the allegation of failing to submit a separate application for her, he never addresses that. And, in fact, Karofsky states that she didn't want to testify about her husband. He doesn't address the allegation that he failed to put her on the stand to testify about her own application and the own incident that she personally was subjected to. Now, as far as the country can... But what's the requirement if there's a factual dispute in the statements that are submitted in connection with the motion to reopen? There's actually a case on this, Your Honor, SALTA versus INS, I believe, which says that if there is a factual dispute, that the case should be remanded to the immigration judge for an evidentiary hearing. And the site on that, actually, it's in the briefs, Your Honor. I don't have it offhand. It's in your brief? Yes. SALTA? Correct. Now, as far as the country conditions, the immigration judge concluded that there was no evidence in the record of serious ethnic conflict in the Ukraine. And that decision was, of course, affirmed by the board in its direct appeal, in the direct appeal decision. Now, clearly, there's some sort of error here, because the documents submitted in the motion to reopen establish overwhelmingly that there is evidence of serious ethnic conflict in the Ukraine, especially towards Russians, Jews, and other minorities in the Ukraine, because of this rise of the ultranationalist movement and this movement for Ukraine for Ukrainians only. And, Your Honors, I'd like to direct you to a recent decision that I submitted to the court just this last week, I believe. It's an 11th Circuit decision called Vitaliev. And that involves somebody who was from half-Azerbaijani and also Ukrainian. And he, in fact, in that case, the 11th Circuit details, again, the existence of the ultranationalist movement and details this attempt to cleanse the country of all people that are not pure Ukrainians. At the time of the hearing before the immigration judge, in fact, there was a 60 Minutes show that had aired years before to over 17.5 million viewers who watched a show about this movement, this ultranationalist movement in the Ukraine. And this was never submitted into the record. And, of course, it would have corroborated Petitioner Khrushchev's testimony about the assaults that he encountered and that his wife encountered and that his daughter encountered as a result of the Russian nationality. That was never submitted. In addition, there was a number of other documents that established the arson of a Russian cultural center, the murder of a prominent Russian professor, and the rise of the ultranationalist movement, all of which were available at the time of the hearing before the immigration judge and which were never submitted. Clearly, had these documents been submitted, the outcome in the proceeding may have been affected. Now, as to the issue of the withholding application, again, no claim from Mrs. Khrushcheva was ever heard before the immigration judge. She had a claim of past persecution that was very valid. If you could compare her case to this Court's decision in Korablina, which involved a Ukrainian Jew who experienced one assault, Mrs. Khrushcheva experienced at least two incidents of violent physical assault in addition to losing her job. Counsel, could I go back for a moment to the question that Judge Canby asked regarding what happens if there's a conflict in the evidence on a motion to reopen? You cited the Saltik case in your brief. But you cited that case for the proposition that it should be remanded for an evidentiary hearing to determine if the petitioners failed to receive notice as they claimed. That was not a conflict in the record. That was just an assertion by the petitioners that they failed to receive notice. And similarly, with the Arietta case that you cited, that's when they've when a declaration has been submitted, there's no conflict in the record. And so do you have a case that talks about when there is competing evidence, how that's resolved? I don't, Your Honor. I think those cases in general stand for the proposition that if there's an issue as to fact, it should be sent to the immigration judge. But I do want to direct the Court that even if Mr. Kowalski's statement is taken as true, there's no dispute that he failed to file a separate application for withholding, and there's no dispute that he failed to properly document Mrs. Hosieva's case, because he never addressed that allegation, which was Where's the motion to reopen in the record? It's at Well, there's two parts to it, but in general it starts around, I think, I believe 300. And in one of the attachments is a letter from myself to Mr. Kowalski where I do detail his failure to properly document Mrs. Hosieva's case. One more statement is I'd like to address the failure to, I'm sorry, the Board's decision in concluding that there was not a change in country conditions. If the Court concludes that Kowalski properly represented Petitioners and properly documented their case, then the Court must conclude that the Board erred in finding that there was not a change in country conditions, because as the evidence is overwhelming that was in the motion to reopen, it's clear that there is serious ethnic conflict in Ukraine as far as the treatment of Russian nationals, and that was never presented to the immigration judge. Hence, there was either an error by Kowalski in failing to submit it, or there's been a change in country conditions. Your record makes the point that almost all of that is anti-Semitic activity on the part of the Your Honor, and He does make that point, and I actually go through in the reply brief to go through specifically, for instance, the 60 Minutes report, where there are explicit references to the treatment of both Russians and Jews, and that there's the treatment of minorities in general by the ultra-nationalist movement applies equally to Jews, to Russians, and to other minorities in the country. To what extent should we take account of possible differences within Ukraine? I'm sorry, Your Honor? To what extent should we take account of differences in the level of oppression or non-oppression within Ukraine? In other words, the Crimea and places like that where the Russians are in the majority? A couple of points on that. The Crimea issue was never addressed, of course, by the Board in the motion to reopen. And so, as far as affirming a decision on the motion to reopen, the court cannot affirm the decision for reasons not stated by the agency. Now, as far as the direct appeal, the immigration judge never went through to determine whether or not it was reasonable to have petitioners relocate to Crimea. And, of course, Crimea is under civil strife in the conflict between Russia and Ukraine. And so that would have been necessary to engage in that reasonableness analysis. I'd like to reserve the remaining of my time. All right, counsel. May it please the Court. My name is Colette Winston. I represent Attorney General Mew Casey, the respondent in this immigration case. Just to clear up a few points before I begin my presentation, the motion to reopen in the record is on pages 82 to 611. The supplemental motion to reopen is on pages 17 to 59. Thank you, counsel. And the second supplemental motion to reopen is on pages 6 to 14. Thank you. Also, the 60-minute report raised is not grounded necessarily in fact. It's a presentation on TV and apparently raised a huge uproar among the Ukrainian community in the United States. And there's a footnote in our brief that talks about a rabbi who challenged the veracity and the truthfulness of that 60-minute report. And as far as Crimea is concerned, it looks like, ironically, the Russians – the Russian Ukrainians are the aggressors there. Just to present my argument, there's two petitions for review here before the Court. The first one concerns the Board of Immigration Appeal – Board of Immigration Appeals decision, which is the appeal of Hussiev's – Mr. Hussiev's appeal. First, the Court lacks jurisdiction because it's over the question of the timeliness of an asylum application. He filed his asylum application one-and-a-half years after he arrived in the United States. The time limit is one year. The extraordinary circumstances that he had tried to allege is a discretionary determination, and neither court does not have jurisdiction over the timeliness of an asylum application. Likewise, the Court has no jurisdiction over the extraordinary circumstances alleged. Does Ramadan affect that? I'm sorry? Does Ramadan affect that? Ramadan talks about changed circumstances, not extraordinary circumstances. And Ramadan talks about a mixed question of fact and law. Here, you have a pure question of fact, because at base, the reason why he was not able to show extraordinary circumstances was a lack of credibility. He was – before the asylum officer had an asylum interview, and the Petitioner stated during his interview that he was aware of the one-year filing deadline, but, quote, he did not think he had any chance to obtain asylum because only Jews were receiving asylum and not Russians. He also stated that he could not find an attorney, and that he first consulted an attorney in April of 2001. Yet later at his – later at his hearing, he testified that he hired some mysterious man named Boris Kaplan, and there is no evidence at all in the record of the existence of this individual, who was supposed to be a paralegal. There is a regulation which says that if you have temporary legal status in the country, that you should have a reasonable time to apply after that expires. Correct. Now, the immigration judge did not feel he had – he had – I understand what the immigration judge did, but the ordinary person might think that, well, you have one year to apply for asylum, so here's the end of my status, and if I apply within the year, I'm going to be fine. And he applied, what, one day before the end? He actually applied six months late. He arrived on November 20 of 1999. From the time of the expiration of his legal status. It was about 364 days. Right. So if he thought that he had a year from the time his status expired, maybe there's something there. Well, when his attorney was asked at the asylum interview about why he filed his application, past the one-year deadline, his first attorney, Mr. James, confirmed that he was retained in April 2001 and that the delinquency was due to what Petitioner heard, namely, that only religious Russian refugees were obtaining asylum and not ethnic refugees. So from the asylum interview, and if you look at the asylum interview that's typed, which is on page 831, as well as the notes of the asylum officer, which are very telling, on page 836, volume 3 of the record, those asylum officer notes show that the question was asked to him, why were you late? Why did you file after the one year? And Mr. Husiev said, well, I didn't think I had any chance. And then it was asked again, any other reason? What other reason did you have for filing after the year? And he said, well, I couldn't find an attorney. At that point, you would think that if he had spoken to someone who was a paralegal who was going to file his asylum application on time, that story would have come tumbling out. Nothing was said, either to the asylum officer or to his first attorney. So the immigration judge and the board, who affirmed the immigration judge, came to the conclusion that the extraordinary circumstances that he tried to raise to excuse his untimely filing were not credible. Those circumstances did not hold water. There was no proof in the record. Was there any mention at all of the fact that his legal status had expired after the year had run? Yes, it was mentioned. And I believe that when they talked a little, the government presented a preamble to the regulation, and the immigration judge took note that that was what the government was representing. But then he went on to feel that this still was not a reasonable period of time. Certainly, if you have one year to file an application and then your visa expires, you wouldn't necessarily get another year. It may not be six months to the day, but certainly he took much more than even the six months which is recognized in the preamble. And that's what the immigration judge concluded. Even though he had no asylum claim, because he did file in an untimely fashion, he did have a withholding claim that he could have made. Again, he was not credible. He started in the middle of his or the beginning of his merits hearing. Once the merits hearing had begun, he talked about 15 political speeches that he had made and that weren't mentioned at his asylum interview, weren't mentioned in his asylum application, and wasn't mentioned to his first attorney. And there's a dispute as to whether he mentioned it to his second attorney or not. But he later says he mentioned it to someone in his office. He says that he took the advice of friends and decided not to mention his political speeches that he made. These go to the heart of his asylum claim. Exactly what did he establish? He did establish that his daughter had been abused and that he lost his job and that he had, both he and his wife had been assaulted and, assaulted and insulted. There's no question that that, that was all credible. Well, the immigration judge found him not to be credible in a general way. And yes, he did testify that his daughter was assaulted. He testified that his wife had a couple of incidents, one involving a train where she was pushed out of a train. And there's a question. He himself had lost jobs, excellent jobs, high-ranking jobs. So certainly he, he testified very thoroughly, very clearly. He filed affidavits, one of which was 46 paragraphs. He presented all the evidence he felt he should. Yet he didn't present the evidence of the political speeches out of which he. And my point was, if we put the political speeches aside, was there enough left that would establish his persecution on account of his native origin? I understand. I would say not. I would say that what the judge found was it was discriminatory behavior but didn't rise to the level of persecution. And under withholding, the burden is much higher. It has to be clear and convincing evidence. And he did not meet his burden, even though he had the opportunity to tell his tale and to explain everything that happened to him while he was still in Ukraine. You get the flavor from reading the immigration judge's opinion that he was found not credible because his wife wasn't credible. Because his wife wasn't credible? His wife didn't testify. I don't mean that. Well, the statements. There's a — there was testimony. He was found not credible. And then wasn't there another witness that was also? I may have that mixed up. No, I don't think so. I think he was the only witness. Okay. All right. I'm sorry. I apologize. With regard to the second petition for review, there were four points as to why this Mr. Kurofsky, the second attorney, was ineffective, none of which hold water. Mrs. Hussiev did not want to testify. She was on the witness list, page 1225. So obviously there was an intent to put her on. She didn't testify. But, counsel, let me ask you this. Opposing counsel made a distinction and said that the attorney was ineffective for failing to file a separate withholding application for the wife. What's your response to that? It's true that you cannot be derivative on a withholding application. You can on an asylum application. But she would have had to have filed her own withholding application. She didn't have enough there to meet her burden. Mr. Hussiev didn't have enough. She had much less than Mr. Hussiev did. She filed an application after the fact as part of her motion to reopen. And the board, in reviewing the motion to reopen, felt that her application was skeletal, but wasn't enough, would not have met the high burden for withholding of removal. Now, was the issue about the failure to file a withholding application, was that made in the motion to reopen? Yes, it was. It was one of the four criticisms leveled against Attorney Karofsky. And we responded in our brief to show that it wouldn't have made any difference and the board specifically addressed it. Do you think that that's appropriate when she had no opportunity to make her case because it wasn't an application filed? You're saying that there's no prejudice because you just look and see she didn't have anything, but how do we know that? Well, the attorney, when he submitted an affidavit in response to the Lozada papers that were submitted against him, explained that she didn't want to testify, that she didn't want to come forth. And also that the application didn't seem to be enough. So I would say that it was a tactical decision on the part of the attorney. It didn't rise to ineffective assistance of counsel. He didn't miss a deadline for filing a petition for review or anything that is that obvious. He was actually very diligent, very conscientious, filed 11 affidavits, tried to get in touch with people to find out who Kaplan was. So he gave his explanation, and his explanation was she didn't want to testify. So I'm just assuming here that maybe that's one of the reasons why he didn't have her file a separate withholding application. In any event, as the board found, it wouldn't have made any difference. Was there any reference in the denial of reopening to credibility? In the denial of reopening, I would have to quickly check. I don't think there was any reference except the lack of credibility between within Mr. Husiev's motion to reopen, because at one point Mr. Husiev said, I told the attorney about my political speeches. That's on page 331.  Then he flip-flopped and filed another affidavit after the attorney responded and said, I told someone. So that was a credibility issue, but not necessarily from the first hearing. Well, not necessarily from the first hearing. All right. Counsel, you've exceeded your time. Thank you. Thank you very much. Rebuttal. Thank you. First, I'd just like to reiterate that on the motion to reopen, the standard for this Court is whether the outcome may have been affected and not whether withholding or asylum or any standards actually had been met. As far as the 60 minutes report goes, the board never addressed the existence of the 60 minutes report at all. So certainly there's no question that the outcome may have been affected had the report been submitted by Karofsky. As far as jurisdiction, the motion to reopen, there's no question there's jurisdiction on the issue of whether or not Karofsky properly advised petitioners to corroborate the existence of Kaplan and whether or not they went to Kaplan. Under the Fernandez decision on motions to reopen, it's very clear that there's jurisdiction for ineffective assistance of counsel claims. On the direct appeal on the issue of the six-month rule for filing after the expiration of lawful immigrant status, that's an issue. It's a legal issue. It's reviewable under the Real ID provision of 8 U.S.C. Section 12. Why is it a legal issue if there were factual determinations that are in dispute? Because the immigration judge concluded the application was untimely because it wasn't submitted within six months of falling out of lawful immigrant status, relying on the 2000 regulation. And of course, as we briefed, petitioners never could have complied with that regulation because it didn't exist at the time of their nonimmigrant visa and it didn't exist within six months of them falling out of nonimmigrant status. Didn't the court make a credibility determination on whether or not the reason for the untimeliness was believable? On the issue of whether or not they paid Boris Kaplan $5,000. But there's no credibility issue or no factual issue at all on the issue of six months after the requirement to file six months after falling out of lawful immigrant status. There was no question that they filed 364 days after falling out of lawful immigrant status. There's a question whether it was reasonable. And wasn't there a determination, factual determination made on that? There's not. The immigration judge never goes through the individual analysis that's required under matter of YC because he concluded that there's a six-month rule. You didn't meet it. Now let's look to whether or not you had extraordinary circumstances because of Boris Kaplan. And that was the factual inquiry. But as to the first, there was no factual inquiry. To the six-month rule, if that was new, was it new as part of a new system of grace for people who had legal status? And I guess to phrase my point a little differently, you say, well, he never could have complied with the six-months thing. But if the rule was you have to file within a year, then we come in with a rule saying, well, if you had legal status, you have a reasonable time after a legal status to file, and that's six months. That's a new dispensation. And the fact that he can't meet it when it comes in is. Your Honor, there always was a rule since the regulation was first enacted that you could file within, you could file untimely if there was an extraordinary circumstance for your failure to file in a timely manner. And so that was interpreted then by people to be if you're in lawful status, you wouldn't file for asylum. And that preexisted the six months. Correct. And then after that regulation, the 2000 regulation was implemented with the lawful immigrant status. Yes. Okay. Last, I'd like to address Karofsky's failure to corroborate or to advise Petitioners to corroborate the existence of the political speeches. So Petitioner Hoseev testified in an April 2004 hearing that he made 10 to 15 political speeches condemning the ultranationalist movement. There were two more hearings after that hearing in which certainly witnesses could have been offered to corroborate that they were eyewitnesses to these political speeches. And that was never done. In fact, Petitioners were never advised of the need to find corroboration. And certainly Karofsky was on notice of the need to do that under this Court's decision in situ. It was very clear that since the political speeches had not been referred to at the asylum interview, there would be an issue of credibility and corroboration was necessary. And in our motion to reopen, we have nine different declarations from people who were eyewitnesses to the political speeches. But Petitioner was never asked to provide corroboration or to obtain declarations or to obtain witnesses. Could you wrap up, Counsel? I think that's all. Thank you very much. Thank you. Thank you to both Counsel. The case just argued is submitted for decision by the Court. And we will be in recess for 10 minutes. All rise. This Court is now in recess for 10 minutes. 10 minutes. 10 minutes. 10 minutes. 10 minutes. 10 minutes. 10 minutes. Thank you. Thank you. Thank you. Thanks a lot. See you guys. Good luck. Good luck. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. How are you? How are you?  How are you? How are you? How are you? How are you? How are you? How are you? That's one of the good things about working for the government. I don't have that problem. Yeah. Yeah. All right. The next case on calendar for argument is El Moussa v. McCasey.
judges: B. Fletcher, Canby, Rawlinson